WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| Pamela Ann Wood, a married woman filing individually, | No. CV-13-00063-PHX-JAT |
|---|---|
| Plaintiff, | **ORDER** |
| v. | |
| University Physicians Healthcare, an Arizona corporation, | |
| Defendant. | |

Pending before the Court is Defendant University Physicians Healthcare's ("UPH") Motion for Judgment on the Pleadings Re: Counts I, IV, and VI of Plaintiff's Complaint under Federal Rule of Civil Procedure 12(c) and the parties' Stipulated Motion to Dismiss Counts I and VI of Plaintiff's Complaint with Prejudice.

**I.     Background**

Plaintiff Pamela Ann Wood ("Wood"), a previous employee of UPH, has brought the present action against UPH alleging intentional infliction of emotional distress, negligent infliction of emotional distress,[1] disability discrimination under the Americans with Disabilities Act, constructive discharge, retaliation, and defamation.  In the pending motions, the parties have stipulated to the dismissal of Wood's claims for intentional infliction of emotional distress and defamation (Counts I and VI).  UPH also seeks to dismiss Wood's claim constructive discharge (Count IV).  Wood has alleged (Doc. 1-1)

---

[1] Wood has already voluntarily dismissed her negligent infliction of emotional distress claim.  (Doc. 11).

the following facts in her Complaint.[2]

In the late 1990's, Wood was diagnosed with Crohn's disease. (*Id.* ¶ 8). Crohn's disease is an incurable chronic disease of the intestinal tract that can cause pain, diarrhea, weight loss, bleeding, fevers, and fatigue. (*Id.*). The symptoms of Crohn's disease vary in intensity, but stress can cause flair ups. (*Id.*).

In September 2008, UPH hired Wood as a case manager. (*Id.* ¶ 6). For the first three months of Wood's employment, she was supervised by Deb Keller. (*Id.* ¶ 9). Ms. Keller was then promoted to "Director," and Martha Rodriguez supervised Wood. (*Id.*).

Shortly after being hired, the Mayo Clinic accepted Wood for treatment of her Crohn's disease. (*Id.* ¶ 10). Wood then informed Ms. Keller of her chronic illness for the first time. (*Id.* ¶ 11). Further, Wood explained that she may have to miss work for doctor's appointments. (*Id.*).

In fall of 2008, Ms. Keller completed an unfavorable "impromptu review" of Wood. (*Id.* ¶ 12). Following the review, Ms. Keller told Wood that she had discussed Wood's medical condition with the UPH "Medical Director" and that they felt that Wood should take a lesser position. (*Id.*). Wood did not give Ms. Keller permission to discuss her medical history with anyone. (*Id.*). Wood was also informed that she would be unable to work from home. (*Id.* ¶ 13). Previously, during her hiring interview, Wood had been informed that she would be able to work from home. (*Id.*). Further, other employees of UPH were able to work from home. (*Id.*).

After Ms. Keller's promotion, Wood was responsible for training two new case managers. (*Id.* ¶¶ 14,15). One of these new case managers, Dyana Cairns, was absent from work six times without reprimand within the "first months" of her employment. (*Id.* ¶ 14). Ms. Cairns' absences exceeded Wood's absences due to doctor's appointments "in any given month." (*Id.*). The second case manager, Margarita Wellman, was receiving a higher wage than Wood despite the fact that Wood was training her. (*Id.* ¶ 15).

---

[2] The Court construes all facts alleged in the Complaint in the light most favorable to the drafter. *See Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000).

1    Shortly after learning that Ms. Wellman was receiving a higher wage, Wood
2    reported her concerns to her supervisor, Ms. Rodriguez. (*Id.* ¶ 16). Ms. Rodriguez
3    informed Wood that she had talked with Ms. Keller about Wood's concerns and that
4    nothing was going to change. (*Id.*) She also told Wood to "not get upset, you'll make
5    yourself sick." (*Id.*)

6    A few days later, Wood called the UPH ethics and compliance hotline to report the
7    pay discrepancies and the harassment concerning Wood's doctor's appointments. (*Id.*
8    ¶ 17). Wood obtained the hotline number from a break room poster that assured there
9    would be no retaliation for calling. (*Id.*)

10   On August 24, 2009, Wood met with Ms. Keller to discuss her concerns. (*Id.* ¶
11   19). Ms. Keller stated that Wood's illness was affecting her work, including the time that
12   she had missed for doctor's appointments. (*Id.*). Ms. Keller requested that Wood take a
13   form to her doctor. (*Id.*). Wood's doctor could then fill out the form with how much
14   work Wood was going to miss and what accommodations Wood might need. (*Id.*). Ms.
15   Keller also requested that Wood take a copy of her position description to her doctor to
16   help her doctor to fill out the form. (*Id.*). Finally, Ms. Keller required Wood to attend a
17   weekly one-on-one meeting with her supervisor because she called the ethics hotline and
18   "failed to follow the chain of command." (*Id.*). Rather than comply with Ms. Keller's
19   request, Wood gave three weeks' notice and then resigned her employment. (*Id.* ¶ 20).

20   **II.   Legal Standard**

21   Federal Rule of Civil Procedure ("Rule") 12(c) is "functionally identical" to Rule
22   12(b)(6). The same legal standard therefore applies to motions brought under either rule.
23   *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys.*, 637 F.3d 1047, 1055 n.4 (9th Cir. 2011);
24   *Dworkin v. Hustler Magazine, Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989) ("The principal
25   difference between motions filed pursuant to Rule 12(b) and Rule 12(c) is the time of
26   filing. Because the motions are functionally identical, the same standard of review
27   applicable to a Rule 12(b) motion applies to its Rule 12(c) analog.").

28   The standard for deciding Rule 12(b)(6) and Rule 12(c) is established in the

Supreme Court's decisions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).[3]  To survive a motion for failure to state a claim, a complaint must meet the requirements of Rule 8(a)(2).  Rule 8(a)(2) requires a "short and plain statement of the claim showing that the pleader is entitled to relief," so that the defendant has "fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

Although a complaint attacked for failure to state a claim does not need detailed factual allegations, the pleader's obligation to provide the grounds for relief requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations omitted).  The factual allegations of the complaint must be sufficient to raise a right to relief above a speculative level. *Id.*  Rule 8(a)(2) "requires a 'showing,' rather than a blanket assertion, of entitlement to relief.  Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." *Id.* (citing 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1202, pp. 94, 95 (3d ed. 2004)).

Rule 8's pleading standard demands more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 677 (citing *Twombly*, 550 U.S. at 555).  A complaint that offers nothing more than naked assertions will not suffice.  To survive a motion to dismiss, a complaint must contain sufficient factual matter, which, if accepted as true, states a claim to relief that is "plausible on its face." *Iqbal*, 556 U.S. at 677.  Facial plausibility exists if the pleader pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.*  Plausibility does not equal "probability," but plausibility requires more than a sheer possibility that a defendant has acted unlawfully. *Id.*  "Where a complaint pleads facts that are 'merely consistent' with a defendant's liability, it 'stops short of the line between

---

[3] The Ninth Circuit has applied *Iqbal* to Rule 12(c) Motions. *Cafasso*, 637 F.3d at 1055 n.4.

possibility and plausibility of entitlement to relief.' " *Id.* (citing *Twombly*, 550 U.S. at 557).

In deciding a motion to dismiss, the Court must construe the facts alleged in the complaint in the light most favorable to the drafter of the complaint and must accept all well-pleaded factual allegations as true. *See Shwarz*, 234 F.3d at 435. Nonetheless, the Court does not have to accept as true a legal conclusion couched as a factual allegation. *Papasan v. Allain*, 478 U.S. 265, 286 (1986). The Court may dismiss a complaint for failure to state a claim for two reasons: (1) lack of a cognizable legal theory; and (2) insufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

**III.   Analysis**

The parties have already stipulated to the dismissal of Counts I and VI. Thus, UPH's motion for judgment on the pleadings on Counts I and VI is denied as moot. The Court will thus examine the only remaining count addressed by UPH's motion for judgment on the pleadings, Count IV.

### A.   Count IV, Constructive Discharge

UPH argues that Wood has failed to allege a successful constructive discharge claim because constructive discharge is not an independent cause of action under Arizona law. (Doc. 13 at 8–12). In particular, UPH contends that Arizona's constructive discharge statute, A.R.S. § 23-1502, does not create a cause of action distinct from Arizona's wrongful termination statute, A.R.S. § 23-1501. (*Id.* at 8–9). Instead, UPH argues that A.R.S. § 23-1502 allows employees to assert a wrongful termination action when they have not been expressly fired. (*Id.* at 9). UPH asserts that Wood has failed to allege a cause of action under A.R.S. § 23-1501 and thus cannot allege a violation of A.R.S. § 23-1502. (*Id.* at 12).

In response, Wood argues that Arizona courts have recognized constructive discharge as a separate cause of action. (Doc. 17 at 6–7). But, if the Court is not persuaded by this argument, Wood asks for leave to amend her complaint to include an

1  Arizona statutory cause of action.  (*Id.* at 7).

2  A.R.S. § 23-1502 provides that "[i]n any action under the statutes of this state or
3  under common law, constructive discharge may only be established by either": (1)
4  "[e]vidence of objectively difficult or unpleasant working conditions to the extent that a
5  reasonable employee would feel compelled to resign"; or (2) "[e]vidence of outrageous
6  conduct by the employer or a managing agent of the employer, . . . if the conduct would
7  cause a reasonable employee to feel compelled to resign."  If the employee alleged
8  "objectively difficult or unpleasant working conditions," the employee must also comply
9  with the procedural requirements of A.R.S. § 23-1502(B), which largely consist of fifteen
10 days written notice to the employer.

11 As an initial matter, the statutory text refutes UPH's argument that a constructive
12 discharge action *must* be based in an underlying wrongful discharge action under A.R.S.
13 § 23-1501.  The statute explicitly contemplates that constructive discharge can be
14 established "in any action under the *statutes of this state* or *under common law*."  A.R.S.
15 § 23-1501 (emphasis added).  Thus, constructive discharge is clearly available to
16 plaintiffs alleging violations of law other than A.R.S. § 23-1501, *i.e.*, common law causes
17 of action.  Further, "statutes of this state" implies that multiple state statutes could form
18 the basis of the claim.  This understanding of the statute is in accord with Arizona case
19 law.  *See Barth v. Cochise Cnty., Arizona*, 138 P.3d 1186, 1189 ¶ 11 (Ariz. Ct. App.
20 2006) (examining the procedural requirements of a constructive discharge claim when
21 wrongful termination was not alleged).

22 But, the fact that A.R.S. § 23-1502 is distinct from wrongful termination under
23 A.R.S. § 23-1501 does not necessarily mean that A.R.S. § 23-1502 creates a truly
24 independent cause of action, *i.e.*, that constructive discharge can be alleged without any
25 other claims.  On the one hand, the statutory language appears to subordinate constructive
26 discharge claims to actions under state statutes or common law.  A.R.S. § 23-1502 ("[i]n
27 any action under the statutes of this state or under common law, constructive discharge
28 may only be established by either . . .").  Further, A.R.S. § 23-1502 does not specify any

remedy for constructive discharge, which is typically required in an independent tort. Finally, for comparison, the federal law doctrine of constructive discharge is not a cause of action in its own right. *See Penn. State Police v. Suders*, 542 U.S. 129, 141 ("Under the constructive discharge doctrine, an employee's reasonable decision to resign because of unendurable working conditions is assimilated to a formal discharge for remedial purposes.")

On the other hand, Arizona courts have discussed A.R.S. § 23-1502 constructive discharge as if it were a separate cause of action. *See Barth*, 138 P.3d at 1189 ¶ 11 (stating that A.R.S. § 23-1502 "sets out the procedural requirements for bringing a constructive discharge action").[4]  Further, the Revised Arizona Jury Instructions (Civil) provides a model jury instruction for A.R.S. § 23-1502 constructive discharge, though it notes that "[t]here is an active debate among labor and employment practitioners as to whether constructive discharge is an independently actionable cause of action." Revised Arizona Jury Instructions (Civil), Employment Law Instructions 11 (4th ed. rev. 2005).

Here, Wood has asked for leave to amend her complaint to include a charge under a "similar state statute" in Arizona to her "Title VII" claim. (Doc. 17 at 7). Assumedly, Wood means to amend her complaint to bring a claim under Arizona Civil Rights Act ("ACRA"), A.R.S. §§ 41-1401 through 1492. In an abundance of caution, the Court will allow leave to amend.[5]  In her amended complaint, Wood should make clear whether she is alleging constructive discharge as part of her ACRA claim or as a completely separate cause of action. If Wood chooses to bring constructive discharge as an independent

---

[4] This Court has also discussed A.R.S. § 23-1502 constructive discharge as if it were a separate cause of action, without expressly deciding so. *See Biggs v. Town of Gilbert*, CV11-330-PHX-JAT, 2012 WL 94566 at **8–9 (D. Ariz. Jan. 12, 2012) (dismissing a constructive discharge claim for failing to meet the procedural requirements).

[5] UPH argues that any leave to amend to include an ACRA claim would be futile because only a claim under A.R.S. § 23-1501 can support a constructive discharge claim and claims under the ACRA are distinct from claims under A.R.S. § 23-1501. (Doc. 18 at 6–7). As already explained, the Court has determined that, even if constructive discharge is not an independent cause of action, A.R.S. § 23-1501 is not the sole basis for supporting a constructive discharge claim.

- 7 -

cause of action, UPH can file a new motion on this issue. Accordingly, at this time, the Court will not decide whether A.R.S. § 23-1502 constructive discharge is an independent cause of action.

### III. Conclusion

Based on the foregoing,

**IT IS ORDERED** that the parties' Stipulated Motion to Dismiss Counts I and VI of Plaintiff's Complaint with Prejudice (Doc. 44) is granted. Counts I and VI are dismissed with prejudice.

**IT IS FURTHER ORDERED** that UPH's Motion for Judgment on the Pleadings Re: Counts I, IV, and VI of Plaintiff's Complaint (Doc. 13) is granted in part and denied in part. With respect to Counts I and VI, the motion is denied as moot. With respect to Count IV, Plaintiff's request to amend her Complaint to include a claim under the ACRA is granted (Doc. 17). Plaintiff must file an amended complaint within 14 days of the date of this order. If Plaintiff fails to file the amended complaint to clarify her constructive discharge theory of Count IV, the Court will deem Count IV to be abandoned and dismissed as a result of this Order (the case will still then proceed on the currently filed complaint consistent with this Order). Because the amended complaint supersedes the original complaint, Plaintiff must replead all causes of action in the amended complaint except for the Counts already dismissed by this Court.[6]

**IT IS FURTHER ORDERED** that the dispositive motion deadline is extended to January 10, 2014.

Dated this 21st day of November, 2013.

James A. Teilborg
Senior United States District Judge

---

[6] *See Lacey v. Maricopa County*, 693 F.3d 896, 928 (9th Cir. 2012) (en banc).