1    WO

2

3

4

5

6                    **IN THE UNITED STATES DISTRICT COURT**

7                        **FOR THE DISTRICT OF ARIZONA**

8

9    Pamela Ann Wood,                          No. CV-13-00063-PHX-JAT

10                        Plaintiff,            **ORDER**

11   v.

12   University Physicians Healthcare,

13                        Defendant.

14           Pending before the Court is Defendant's Motion for Summary Judgment (the

15   "Motion"). (Doc. 53). Defendant has also filed a Separate Statement of Facts. (Doc. 54).

16   Plaintiff has filed a Response to the Motion (Doc. 57) and a Controverting Statement of

17   Facts in Support of Opposition to the Motion (Doc. 58). Defendant has filed a Reply.

18   (Doc. 59). The Court now rules on the Motion.

19   **I.      BACKGROUND**

20           For purposes of the Court's resolution of the pending Motion, the Court considers

21   the relevant facts and background, viewed in Plaintiff's favor,[1] to be as follows.

22           On September 2, 2008, Pamela Ann Wood ("Plaintiff") began working as an Adult

23   Nurse Case Manager for University Physicians Healthcare ("Defendant"). (Plaintiff's

24   Controverting Statement of Facts ("PCSOF"), Doc. 58 ¶¶ 20, 22; Defendant's Statement

25   of Facts ("DSOF"), Doc. 54 ¶¶ 20, 22). As an Adult Nurse Case Manager, Plaintiff was

26

27   ─────────────────

28           [1] In the summary judgment context, the Court construes all disputed facts in the
     light most favorable to the non-moving party. *Ellison v. Robertson*, 357 F.3d 1072, 1075
     (9th Cir. 2004).

responsible for documenting and caring for patients who were members of Defendant's Health Plan, including advising the patients on hospital discharge, follow-ups, calls to patients, and problem solving with respect to health care and other issues. (PCSOF ¶ 35). Plaintiff's salary was set at $30.00 per hour. (PCSOF ¶ 32). Additionally, until January 2009, Deb Keller ("Keller") served as Plaintiff's supervisor. (PCSOF ¶ 36).

Plaintiff suffered from Crohn's Disease throughout her employment with Defendant. (PCSOF ¶¶ 14, 18). Keller was unaware, however, of Plaintiff's Crohn's Disease when Plaintiff accepted employment with Defendant and when Plaintiff's salary was set. (PCSOF ¶¶ 32, 103). Plaintiff's condition ordinarily causes her to "go to the bathroom a lot" with "major diarrhea," "fatigue," and "joint aches" and is aggravated by stress. (PCSOF ¶ 15).

Prior to an October 2008 meeting between Plaintiff and Keller, Keller conferred with Defendant's Medical Director regarding Plaintiff's health. (PCSOF ¶ 55). Keller and the Medical Director decided that there was a chance they would have to reduce Plaintiff's working hours and, as a result, possibly release Plaintiff from her employment obligations altogether. (PCSOF ¶¶ 55, 56). During the October 2008 meeting, after Plaintiff requested time off to attend medical treatment at the Mayo Clinic, Keller commented, "you were sick when I hired you and you didn't tell me?" (PCSOF ¶¶ 71, 73; DSOF ¶ 73). During the meeting, Keller also denied Plaintiff's request to work from home. (PCSOF ¶ 53). At the close of the meeting, Keller asked Plaintiff to send an e-mail to both Keller and Martha Rodriguez ("Rodriguez"), who replaced Keller as Plaintiff's supervisor in early 2009 (PCSOF ¶ 78), which discussed Plaintiff's medical condition and the possibility that Plaintiff would need to "flex [her] working hours outside of the parameters of the Human Resources guidelines from time to time" due to medical treatment. (PCSOF ¶¶ 59–63; Doc. 54-2 at 30). Following the October 2008 meeting, Plaintiff learned that Keller allowed Tonisha Adams, who did not have the same type of job, certifications, or degree as Plaintiff, to work from home. (PCSOF ¶¶ 64–66).

In summer 2009, Rodriguez hired Dyana Carnes ("Carnes") and Margarita

Wellman ("Wellman") as Adult Nurse Case Managers for Defendant. (PCSOF ¶ 99). Shortly thereafter, Plaintiff learned that Carnes and Wellman earned $34.00 and $32.00 per hour, respectively. (PCSOF ¶ 106; DSOF ¶ 106). After Plaintiff raised the disparate pay issue with her, Rodriguez informed Plaintiff that she considered Carnes', Wellman's, and Plaintiff's salaries to be fair based on each employee's respective qualifications. (PCSOF ¶¶ 108–10; DSOF ¶¶ 108–10). Rodriguez also informed Plaintiff that she may be eligible to receive a raise at her annual performance review in November 2009. (PCSOF ¶ 110; DSOF ¶ 110).

On August 3, 2009, shortly after learning about Carnes' and Wellman's higher salaries, Plaintiff complained to Defendant's Ethics Hotline that Wellman and Carnes were not qualified to make more money than her. (PCSOF ¶¶ 111, 114; DSOF ¶¶ 111, 114). During the hotline call, Plaintiff also complained about being "mistreated and harassed" by Keller and not being allowed to work from home. (*Id.*). Plaintiff's call was referred to Human Resources Partner Cathy Coulter ("Coulter") who investigated and discussed the substance of the issues raised by Plaintiff with Keller and Rodriguez. (PCSOF ¶¶ 117, 118; DSOF ¶¶ 117, 118). Coulter, along with Keller and Rodriguez, reviewed Plaintiff's salary in comparison to Defendant's other Case Managers and determined that no adjustment was necessary. (PCSOF ¶ 119; DSOF ¶ 119). Coulter told Plaintiff to meet with Keller on August 24, 2009 to discuss Plaintiff's concerns about Keller's alleged unfair treatment. (PCSOF ¶¶ 127, 128; Doc. 57 at 3).

Unbeknownst to Keller, Plaintiff recorded the August 24, 2009 meeting. (PCSOF ¶ 132; DSOF ¶ 132). During the meeting, Keller asked to have Plaintiff's doctor fill out a Medical Provider Documentation of Disability form to determine whether Plaintiff required accommodation for her medical condition. (PCSOF ¶¶ 122, 135; DSOF ¶¶ 122, 135). Defendant regularly used this form for Americans with Disabilities Act ("ADA") accommodation requests. (PCSOF ¶ 122; DSOF ¶ 122). Keller premised a decision on whether Plaintiff could work from home on receiving this documentation from Plaintiff's doctor. (Doc. 54-2 at 33). Also during the meeting, Keller stated that she would ask

Rodriguez to have weekly one-on-one meetings with Plaintiff so that Plaintiff could receive Rodriguez's "feedback" and so that Rodriguez would be "more available" to Plaintiff. (Doc. 54-2 at 34, 37). Keller also stated that Rodriguez would review Plaintiff's salary at an upcoming annual performance review in November 2009 and make any warranted adjustments. (*Id.* at 34). On August 27, 2009, three days after her meeting with Keller, Plaintiff submitted her resignation letter to Rodriguez. (PCSOF ¶ 150). Plaintiff volunteered to work an additional two weeks after her resignation despite knowing that she would be paid for that time period regardless of whether she worked. (PCSOF ¶¶ 158, 159; DSOF ¶¶ 158, 159). Rodriguez declined Plaintiff's offer to work for the additional two weeks. (PCSOF ¶ 160; Doc. 57 at 4).

On September 22, 2009, Plaintiff filed a Charge of Discrimination ("Charge") with the Equal Employment Opportunity Commission ("EEOC") against Defendant. (PCSOF ¶ 3; Doc. 58-1 at 25). The EEOC referred the Charge to the Arizona Civil Rights Division ("ACRD") pursuant to a work sharing agreement between the two agencies. (Doc. 58-1 at 48). The EEOC issued its notice of right to sue on March 27, 2012 (*id.* at 40–41), a "number of . . . months" after the "[ACRD] issued the Right to Sue" (Doc. 57 at 11). On November 16, 2012, Plaintiff filed this action in the Maricopa County Superior Court, and on January 10, 2013, Defendant removed this action to this Court. (Doc. 1). On December 4, 2013, Plaintiff amended the Complaint alleging two claims under the ADA and one claim under the Arizona Civil Rights Act ("ACRA"), Ariz. Rev. Stat. §§ 41-1461–1465. (Doc. 50). In the Amended Complaint, Plaintiff alleges that Defendant unlawfully discriminated against Plaintiff in violation of § 102 of Title I of the ADA, 42 U.S.C. § 12112. (*Id.* at 5). Further, Plaintiff alleges that Defendant unlawfully retaliated against Plaintiff in violation of § 503(a) of Title V of the ADA, 42 U.S.C. § 12203(a). (*Id.* at 5–6). Finally, Plaintiff alleges that she was constructively discharged by Defendant in violation of A.R.S. § 23-1502 and that Defendant unlawfully retaliated against Plaintiff in violation of the ACRA. (*Id.* at 6–7).

## II.      SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A party asserting that a fact cannot be or is genuinely disputed must support that assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits, or declarations, stipulations . . . admissions, interrogatory answers, or other materials," or by "showing that materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." *Id.* at 56(c)(1)(A), (B). Thus, summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Initially, the movant bears the burden of pointing out to the Court the basis for the motion and the elements of the causes of action upon which the non-movant will be unable to establish a genuine issue of material fact. *Id.* at 323. The burden then shifts to the non-movant to establish the existence of material fact. *Id.* The non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts" by "com[ing] forward with 'specific facts showing that there is a *genuine* issue for trial.' " *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (quoting Fed. R. Civ. P. 56(e) (1963) (amended 2010)). A dispute about a fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The non-movant's bare assertions, standing alone, are insufficient to create a material issue of fact and defeat a motion for summary judgment. *Id.* at 247–48. Further, because "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, . . . [t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor" at

1   the summary judgment stage. *Id.* at 255 (citing *Adickes v. S.H. Kress & Co.*,

2   398 U.S. 144, 158–59 (1970)); *Harris v. Itzhaki*, 183 F.3d 1043, 1051 (9th Cir. 1999)

3   ("Issues of credibility, including questions of intent, should be left to the jury.") (internal

4   citations omitted).

5          Moreover, the Ninth Circuit "has set a high standard for the granting of summary

6   judgment in employment discrimination cases." *Schnidrig v. Columbia Mach., Inc.*, 80

7   F.3d 1406, 1410 (9th Cir. 1996). As the Ninth Circuit has explained, " '[w]e require very

8   little evidence to survive summary judgment' in a discrimination case, 'because the

9   ultimate question is one that can only be resolved through a 'searching inquiry'—one that

10  is most appropriately conducted by the factfinder, upon a full record.' " *Lam v. Univ. of

11  Haw.*, 40 F.3d 1551, 1564 (9th Cir. 1994) (quoting *Sischo-Nownejad v. Merced Cmty.*

12  *College Dist.*, 934 F.2d 1104, 1111 (9th Cir. 1991)).

13  **III      ANALYSIS**

14         Plaintiff's Amended Complaint alleges three counts: (1) disability discrimination

15  in violation of the ADA; (2) retaliation in violation of the ADA; and (3) retaliation and

16  constructive discharge in violation of the ACRA and A.R.S. § 23-1502. (Doc. 50 at 5–7).

17  Defendant moves for summary judgment on all three counts. (Doc. 53). The Court will

18  consider each count in turn.

19         **A.      Count I: Disability Discrimination (ADA)**

20         Plaintiff's first cause of action alleges that Defendant violated the ADA,

21  42 U.S.C. §§ 12101–12213, by discriminating against Plaintiff in its employment

22  decisions because of Plaintiff's Crohn's Disease. (Doc. 50 at 5). The ADA makes it

23  unlawful to "discriminate against a qualified individual with a disability because of the

24  disability of such individual in regard to . . . terms, conditions, and privileges of

25  employment." 42 U.S.C. § 12112(a).

26         **1.      Exhaustion of Administrative Remedies**

27         Defendant argues that Plaintiff is barred from asserting a disability discrimination

28  claim under the ADA because "she did not pursue, let alone exhaust, her administrative

- 6 -

remedies." (Doc. 53 at 6). Specifically, Defendant contends that Plaintiff did not fulfill the administrative charge requirement for the disability discrimination claim and, alternatively, that claims accrued during and before Plaintiff's October 2008 meeting with Keller are time-barred because they occurred over 300 days before Plaintiff filed her charge with the EEOC on September 22, 2009. (*Id.* at 6–9).

## a. Fulfillment of the Administrative Charge Requirement

Defendant first argues that Plaintiff's claim for disability discrimination should be dismissed because Plaintiff's Charge identified "Retaliation" as its sole basis and contained factual allegations focusing "exclusively on retaliatory constructive discharge." (*Id.* at 7).

A plaintiff must first exhaust her administrative remedies before filing an ADA civil complaint. *See* 42 U.S.C. § 12117(a) (adopting Title VII remedies and procedures for implementing the ADA); *see also B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1099 (9th Cir. 2002) (summarizing the steps a plaintiff must take to exhaust administrative remedies under a Title VII claim). The Court's subject matter jurisdiction is limited to "allegations of discrimination that either 'fell within the scope of the EEOC's *actual* investigation or an EEOC investigation which *can reasonably be expected* to grow out of the charge of discrimination.' " *B.K.B.*, 276 F.3d at 1100 (quoting *EEOC v. Farmer Bros. Co.*, 31 F.3d 891, 899 (9th Cir. 1994)) (emphasis in original). While the EEOC charge should be liberally construed, the claims in the civil complaint must at least be "like or reasonably related to the allegations contained in the EEOC charge" and consistent with the plaintiff's original theory of the case. *Id.* (quoting *Green v. L.A. Cnty. Superintendent of Schs.*, 883 F.2d 1472, 1475–76 (9th Cir. 1989)) (internal quotation marks omitted).

In assessing whether a claim is within the scope of the EEOC investigation and can be reasonably expected to grow out of the charge of discrimination, a court should examine whether the plaintiff described "the facts and the legal theory with sufficient clarity to notify the [EEOC]." *Ong v. Cleland*, 642 F.2d 316, 319 (9th Cir. 1981) (quoting *Cooper v. Bell*, 628 F.2d 1208, 1211 (9th Cir. 1980)) (internal quotation marks omitted),

*accord Greenlaw v. Garrett*, 59 F.3d 994, 999 (9th Cir. 1995). "The crucial element of the charge of discrimination is the factual statement contained therein." *Kaplan v. Int'l Alliance of Theatrical and Stage Emps.*, 525 F.2d 1354, 1359 (9th Cir. 1975) (citing *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 462 (9th Cir. 1970)). Additionally, when construing whether a charge is within the scope of the EEOC investigation, a court may examine evidence contained in the EEOC Intake Questionnaire or explicit notifications within the EEOC's investigation. *See Liaosheng Zhang v. Honeywell Int'l, Inc.*, No. CV-06-1181-PHX-MHM, 2007 WL 2220490, at *3 (D. Ariz. Aug. 1, 2007) (evaluating a plaintiff's EEOC Intake Questionnaire and overall notice to the EEOC where plaintiff failed to check a box on the charge of discrimination).

In her EEOC Charge, Plaintiff marked only the box indicating that she complained of retaliation under the ADA; the box entitled 'Disability' was left blank. (PCSOF ¶ 5; Doc. 58-1 at 25). In her Intake Questionnaire, however, Plaintiff filled out sections that were to be filled out only by those "alleging discrimination based on your disability." (PCSOF ¶ 167; Doc. 58-1 at 26) In this section, Plaintiff explained how her Crohn's Disease affected her work activities (PCSOF ¶ 167; Doc. 58-1 at 26), and Plaintiff also alleged that Keller subjected her to "discriminatory treatment based upon a disability" (PCSOF ¶ 5; Doc. 58-1 at 48).  Elsewhere in her Intake Questionnaire, Plaintiff noted that Keller "had discriminated against [Plaintiff] for [her] disability" and made references to receiving "different benefits, treatment, and pay than other colleagues." (*See* Doc. 58-1 at 25).  Additionally, following an EEOC investigator's interview with Plaintiff, the investigator noted that Plaintiff's Charge was based on both disability discrimination and retaliation. (PCSOF ¶ 171; Doc. 58-1 at 36). Thus, the Court finds that Plaintiff's disability discrimination claim was within the scope of the EEOC's investigation. As a result, Plaintiff fulfilled the administrative charge requirement prior to filing the instant claim for disability discrimination.

### b.    Timeliness of Disability Discrimination Claim

Defendant next argues that Plaintiff's disability discrimination claims which

accrued during and before the October 2008 meeting between Plaintiff and Keller are time-barred because they occurred over 300 days before Plaintiff filed her charge with the EEOC on September 22, 2009. (Doc. 53 at 8). In response, Plaintiff argues that the October 2008 meeting with Keller and acts occurring prior to that meeting are timely because of the continuing violations theory. (Doc. 57 at 8).

Before filing a civil suit under the ADA, a plaintiff "must file a charge within the statutory time period and serve notice upon the person against whom the charge is made." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109 (2002) (citing 42 U.S.C. § 12117(a)). In Arizona, an employee must file a charge with the EEOC within 300 days of the employment practice. *Rush-Shaw v. USF Reddaway, Inc.*, No. CV-12-0941-PHX-JAT, 2013 WL 3455723, at *3 (D. Ariz. July 9, 2013).

The continuing violations theory allows a plaintiff to pursue an ADA claim for employment practice which began outside the limitations period if she can demonstrate that the conduct alleged is part of an ongoing pattern of discrimination effected by the employer. *Draper v. Coeur Rochester*, 147 F.3d 1104, 1107 (9th Cir. 1998). However, the continuing violations theory is inapplicable to discrete discriminatory acts. *Morgan*, 536 U.S. at 114. A discrete discriminatory act consists of conduct that "occurred" on the day it "happened," which includes, for example, "termination, failure to promote, denial of transfer, or refusal to hire." *Id.* For discrete discriminatory acts, "[e]ach incident of discrimination . . . constitutes a separate actionable 'unlawful employment practice.' " *Id.* As a result, "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Id.* at 113. In contrast to discrete discriminatory acts, the continuing violations theory may be applicable to hostile work environment claims. *Id.* at 117–18. Hostile work environment claims do not happen on a particular day as with discrete acts but instead develop over time and each "act of harassment may not be actionable on its own." *Id.* at 114 (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).

Plaintiff's ADA claims which accrued during and before the October 2008 meeting include: (1) "derogatory comments made by Ms. Keller (i.e. 'you knew you were sick when I hired you')" (Doc. 57 at 8–9); (2) "the discussion of [Plaintiff's] disability by members of management staff without her permission" (*id.* at 9); (3) the "discussion of [Plaintiff] taking a 'lesser position' based on her disability" (*id.*); (4) "not being allowed to work from home" (*id.*); and (5) Plaintiff being "both segregated and classified different[ly] from other employees while working for [Defendant]" [2] (*id.* at 10). Because Plaintiff filed her EEOC claim over 300 days after the October 2008 events, these five claims for disability discrimination are time-barred if the employment practices are considered discrete. However, if the events fall under the continuing violations theory, then the claims may be considered.

Plaintiff argues that "numerous examples of discrimination based on her disability" have demonstrated a "pattern of discrimination" which constitutes a continuing violation. (*Id.*). However, Defendant's five allegedly-discriminatory acts are discrete, including: (1) Keller's derogatory comment;[3] (2) Keller's discussion with Defendant's Medical Director regarding Plaintiff's disability;[4] (3) Keller's discussion with Plaintiff that Plaintiff may lose her position if she works less;[5] (4) Keller's denial of

---

[2] Plaintiff does not articulate in what way she was "segregated or classified different[ly]." (Doc. 57 at 10). The Court will assume that Plaintiff alludes to Defendant providing her with less training than the Tucson Case Managers which resulted in her "lagging behind the rest of the people that were hired." (PCSOF ¶ 58).

[3] *See Bailey v. Synthes*, 295 F. Supp. 2d 344, 353 (S.D.N.Y. 2003) ("It is clear from *Morgan* . . . [that] the allegedly unwarranted criticisms, and the crude sexist statements are discrete acts that cannot be lumped together to form a 'continuing violation.' " (citing *Morgan*, 536 U.S. at 113)); *see also Lucke v. Multnomah Cnty.*, 2008 WL 4372882, at *39 (D. Or. Sept. 22, 2008) (holding that isolated comments fall short of establishing an abusive working environment).

[4] *See Polk v. U.S. Airways, Inc.*, 2009 WL 455261, at *6 (S.D. Tex. Feb. 20, 2009) (noting that the dissemination of a plaintiff's medical condition to other employees is a discrete act).

[5] *See Ramsdell v. Huhtamaki, Inc.*, 2014 WL 185331, at *12 (D. Me. Jan. 15, 2014) ("[S]uspension and threat of termination, are easily identified as 'discrete acts.' " (citing *Morgan*, 536 U.S. at 101)); *see also EEOC v. Bloomberg L.P.*, 751 F. Supp. 2d 628, 646–47 (S.D.N.Y. 2010) (recognizing demotions and reductions in responsibility as discrete actions).

1    Plaintiff's accommodation request to work from home;[6] and (5) Keller's dismissal of

2    Plaintiff's request for additional training.[7] While Plaintiff uses "pattern of discrimination"

3    as a conclusory label (Doc. 57 at 9), "discrete discriminatory acts will not create a pattern

4    of discrimination without more; pattern-or-practice claims cannot be based on 'sporadic

5    discriminatory acts' but rather must be based on 'discriminatory conduct that is

6    widespread.' " *The Comm. Concerning Cmty. Improvement v. City of Modesto*,

7    583 F.3d 690, 701 (9th Cir. 2009) (quoting *Cherosky v. Henderson*, 330 F.3d 1243, 1247

8    (9th Cir. 2003)) (internal quotation marks omitted). Because the continuing violations

9    theory does not apply to discrete acts, Plaintiff's five claims accruing during or before

10   October 2008 are time-barred. Accordingly, Plaintiff may only use these prior acts as

11   "background evidence" to support her timely claims. *See Morgan*, 536 U.S. at 113.

12                    **2.      Merits of Plaintiff's Operative ADA Claims**

13          The remaining discriminatory acts Plaintiff alleges include being: (1) paid at a

14   "rate less than other Case Managers"; (2) "required to fill out ADA paperwork to

15   continue her employment"; and (3) "subjected to weekly one-on-one meetings with her

16   supervisor." (Doc. 57 at 9).

17          Courts have consistently utilized the burden-shifting approach established by the

18   Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), when

19   reviewing motions for summary judgment in claims for disparate treatment under the

20   ADA. *See Brown v. City of Tucson*, 336 F.3d 1181, 1186–87 (9th Cir. 2003) (adopting

21   the *McDonnell Douglas* burden-shifting rules for retaliation claims under the ADA); *see*

22   *also Pardi v. Kaiser Permanente Hosp. Inc.*, 389 F.3d 840, 849–50 (9th Cir. 2004)

23

24   _____

25          [6] *See Cherosky v. Henderson*, 330 F.3d 1243, 1248 (9th Cir. 2003) ("[A]n
     employer's rejection of an employee's proposed accommodation . . . does not give rise to

26   a continuing violation. Rather, the rejection is the sort of 'discrete act' that must be the
     subject of a complaint to the EEOC within [the statutory period.]" (modifications in

27   original) (quoting *Elmenayer v. ABF Freight Sys., Inc.*, 318 F.3d 130, 134–35 (2d Cir.
     2003)).

28          [7] *See Lyons v. England*, 307 F.3d 1092, 1107 n.8 (9th Cir. 2002) (listing an
     employer's failure-to-train as a discrete act).

(applying the *McDonnell Douglas* burden-shifting rules for an ADA discrimination claim). Under the *McDonnell Douglas* framework:

> [T]he plaintiff must establish a prima facie case of discrimination. If the plaintiff succeeds in doing so, then the burden shifts to the defendant to articulate a legitimate nondiscriminatory reason for its allegedly discriminatory conduct. If the defendant provides such a reason, the burden shifts back to the plaintiff to show that the employer's reason is a pretext for discrimination.

*Vasquez v. Cnty. of L.A.*, 349 F.3d 634, 640 (9th Cir. 2004) (citing *McDonnell Douglas*, 411 U.S. at 802–05).

To establish a *prima facie* case of discrimination under the ADA, a plaintiff must demonstrate that she: (1) is a qualified individual with a disability;[8] (2) can perform the essential functions of her job; and (3) suffered an adverse employment action because of[9] the disability. *Kennedy v. Applause, Inc.*, 90 F.3d 1477, 1481 (9th Cir. 1996); *see also Nunes v. Wal-Mart Stores, Inc.*, 164 F.3d 1243, 1246 (9th Cir. 1999). "An adverse employment action is one that materially alters the 'terms and conditions' of the plaintiff's employment." *Mamola v. Group Mfg. Servs.*, No. CV-08-1687-PHX-GMS, 2010 WL 1433491, at *6 (D.Ariz. Apr. 9, 2010) (citing *Kang v. U. Lim. Am., Inc.*, 296 F.3d 810, 819 (9th Cir. 2002)).

To carry the burden of establishing pretext in a disability discrimination claim, a plaintiff must present direct or circumstantial evidence showing that a "discriminatory reason more likely motivated the employer" than the legitimate, non-discriminatory reason the employer provided. *Brown*, 336 F.3d at 1188 (quoting *Villiarimo v. Aloha*

---

[8] The ADA defines a qualified individual with a disability as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8).

[9] Here, "because of" is read to require "but for" rather than "proximate" causation. *See UMG Recordings, Inc. v. Shalter Capital Partners LLC*, 718 F.3d 1006, 1017 n.7 (9th Cir. 2013) (citing *New Directions Treatment Servs. v. City of Reading*, 490 F.3d 293, 301 n.4 (3d Cir. 2007), for the proposition that "the ADA prohibits discrimination against an individual '*by reason* of such disability' . . . . [T]his language . . . clearly establishes that the . . . ADA . . . requires only but for causation.").

1   *Island Air, Inc.*, 281 F.3d 1054, 1063 (9th Cir. 2002)) (internal quotation marks omitted).

2   Alternatively, a plaintiff may establish pretext by identifying "specific inconsistencies,

3   contradictions, implausibilities, or weaknesses in the employer's explanation so that a

4   reasonable fact finder could infer that the employer did not act for the asserted reason."

5   *Mamola*, 2010 WL 1433491, at *6 (citing *Dominguez-Curry v. Nev. Transp. Dep't*,

6   424 F.3d 1027, 1037 (9th Cir. 2005)). Circumstantial evidence of pretext must be

7   sufficiently "specific and substantial" to "raise a genuine issue of material fact under

8   Rule 56(c)." *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1029 (9th Cir.

9   2006).

### a.   Pay Disparity

11   Plaintiff alleges that she was "paid less . . . [than] other Case Managers" working

12   for Defendant. The parties do not dispute that Plaintiff is a qualified individual with a

13   disability or that Plaintiff can perform the essential functions of her job. (Doc. 53 at 9–

14   11). Plaintiff, however, must show that, she suffered an adverse employment action

15   (being paid less than Defendant's similarly-situated employees) because of her disability.

16   *See Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 258-59 (1981) ("[I]t is the

17   plaintiff's task to demonstrate that similarly situated employees were not treated

18   equally.") (citing *McDonnell Douglas*, 411 U.S. at 804). Plaintiff alleges that Defendant

19   paid Carnes and Wellman more than her and that Keller rejected her requests for a raise

20   because of her disability. (PCSOF ¶¶ 98, 102). In support, Plaintiff provides only a

21   statement that "when Ms. Keller found out [Plaintiff] had Crohn's disease her whole

22   attitude changed and that there were many times during the year when her pay could have

23   been increased but was not." (PCSOF ¶ 102).

24   The Court finds that Plaintiff fails to establish a *prima facie* case of pay disparity

25   under the ADA because Plaintiff fails to demonstrate that Defendant paid any similarly-

26   situated employees more than Plaintiff. Plaintiff alleges that Wellman and Carnes were

27   paid higher salaries than her. Wellman spoke Spanish, which was important to meet the

28   needs of the Spanish-speaking members of Defendant's Health Plans, and Carnes had

significant experience in health and medical management. (Doc. 54-2 at 47). Plaintiff does not provide any evidence that non-Spanish-speaking Adult Nurse Case Managers were paid more than Plaintiff. Plaintiff also does not provide any evidence that Adult Nurse Case Managers without significant experience in health and medical management were paid more than Plaintiff. Plaintiff offers no other employees with her similar responsibilities. As a result, Plaintiff's support does not raise a genuine issue of material fact that Plaintiff and others were similarly-situated employees. Furthermore, Plaintiff fails to allege any facts that would support but-for causation between her disability and Keller denying her a raise. Despite finding that Plaintiff fails to establish a *prima facie* case, the Court will evaluate the remaining steps of the *McDonnell Douglas* framework to the extent that Plaintiff's unsubstantiated allegations support a *prima facie* case.

Assuming, *in arguendo*, that Plaintiff has established a *prima facie* case, the burden shifts to Defendant to articulate a legitimate non-discriminatory reason for the disparity in compensation. Defendant presents a Declaration of Martha Rodriguez, Manager of Case Management for Defendant (*id.* at 46–49), that states that both Carnes' and Wellman's negotiated salaries were based on unique qualifications including Wellman's ability to speak Spanish and Carnes' "significant experience in health and medical management." (*Id.* at 47). Additionally, after Plaintiff expressed concern over the difference in salaries, Rodriguez and Keller evaluated Plaintiff's salary in relation to her experience and found it fair. (*Id.* at 48). The Court finds the articulated differences in experience and qualifications between Plaintiff, Wellman, and Carnes constitutes a legitimate, non-discriminatory reason for the pay disparity. Thus, the burden shifts back to Plaintiff to show that the reason articulated by Defendant is pretext for a discriminatory motive.

Plaintiff provides no additional proof of pretext besides her own statements regarding Keller's attitude and multiple opportunities to give Plaintiff a raise. As explained above, the factual inquiry regarding pretext requires Plaintiff to produce specific and substantial evidence that Defendant's articulated reason for the pay disparity

1    was really pretext for discrimination. *See Aragon v. Republic Silver State Disposal*,

2    292 F.3d 654, 661 (9th Cir. 2002). Speculations and subjective beliefs do not satisfy this

3    heightened standard of specificity.

4        Thus, the Court finds no genuine dispute of material fact with respect to Plaintiff's

5    pay disparity claim. Accordingly, the Court finds that Plaintiff's alleged pay disparity

6    cannot form the basis of her ADA disability discrimination claim.

7                    **b.    Filling Out ADA Paperwork**

8        Next, Plaintiff alleges that she suffered discrimination when Keller required her

9    "to fill out ADA paperwork to continue her employment." (Doc. 57 at 9). The Parties'

10   only disagreement is whether filling out ADA paperwork constitutes an adverse

11   employment action. (Doc. 59 at 6–7). The Parties agree that, in response to Plaintiff's

12   Ethics Hotline complaint, Keller asked to have Plaintiff's doctor fill out Defendant's

13   standard accommodation form. (PCSOF ¶ 122; DSOF ¶ 122). This standard form was

14   used by Defendant to determine what, if any, accommodations are reasonable or

15   necessary. (*Id.*). Plaintiff does not allege that Keller's request to have Plaintiff's doctor

16   fill out the ADA paperwork changed Plaintiff's hours, wages, benefits, or other

17   conditions of her employment. As a result, filling out the ADA paperwork cannot amount

18   to an adverse employment action. Furthermore, even if Defendant's requirement for

19   Plaintiff's doctor to fill out the ADA paperwork altered the essential terms of Plaintiff's

20   employment in some unspecified way, Defendant's need to accommodate Plaintiff's

21   disability constitutes a legitimate non-discriminatory reason. Plaintiff does not offer

22   evidence showing that this reason was pretext for discrimination.

23       Thus, the Court finds no genuine dispute of material fact with respect to Plaintiff's

24   ADA paperwork claim. Accordingly, the Court finds that Defendant's requirement that

25   Plaintiff fill out a standard accommodation form cannot form the basis of Plaintiff's ADA

26   disability discrimination claim.

27                    **c.    Weekly One-on-One Meetings with Supervisor**

28       Plaintiff alleges that she suffered discrimination through Keller "subject[ing] [her]

to weekly one-on-one meetings with [Rodriguez]." (Doc. 57 at 9). The Parties' only disagreement is whether the weekly one-on-one meetings were adverse employment actions. (PCSOF ¶ 141; DSOF ¶ 141; Doc. 53 at 9–11). Defendant argues that, as evidenced in the transcript, Keller's decision to have Plaintiff and Rodriguez meet weekly was in response to Plaintiff's requests for more time with Rodriguez. (DSOF ¶ 141). The undisputed record shows that, in a March 2009 Performance Management Form, Plaintiff asked for "time for communication" with Rodriguez in order to make Plaintiff more effective in her position. (PCSOF ¶¶ 81–83; DSOF ¶¶ 81–83). Furthermore, in discussing the basis for the one-on-one meetings, Keller notes that Plaintiff is "obviously having some distress as far as the priorities and what other people are doing and what you are doing, so my action is to say I'm going to make your manager more available to you." (Doc. 54-2 at 37). Keller additionally noted that Plaintiff had "voiced very openly that [Plaintiff] had trouble figuring out how all of this is going to come together." (*Id.*). Furthermore, Keller premised the continuation of the meetings on whether, after two weeks, Plaintiff and Rodriguez felt that Plaintiff was "prioritizing everything" to a satisfactory level. (*Id.* at 38). Plaintiff argues that Defendant mischaracterizes the transcript (PCSOF ¶ 142), but Plaintiff fails to articulate how short weekly meetings with her supervisor alter the essential terms of her employment. Because Plaintiff does not explain how the one-on-one meetings constitute adverse employment actions, she fails to establish a *prima facie* case. However, to the extent that the transcript is unclear and that these weekly one-on-one meetings altered the essential terms of Plaintiff's employment in some way, the Court will evaluate the remaining steps of the *McDonnell Douglas* framework.

Defendant asserts that Keller's desire to address Plaintiff's communication skills constitutes a legitimate, non-discriminatory reason to require one-on-one meetings between Rodriguez and Plaintiff. (PCSOF ¶¶ 140–42; DSOF ¶¶ 140–42). In light of the undisputed facts and transcript of the meeting detailed above, the Court agrees. Shifting to pretext, Plaintiff offers nothing but a vague, personal suspicion that Keller was actually

motivated by disability-based animus. Vague suspicions, alone, do not satisfy Plaintiff's burden of specificity. *See Aragon*, 292 F.3d at 661.

Thus, the Court finds no genuine dispute of material fact with respect to Plaintiff's one-on-one meetings claim. Accordingly, the Court finds that Defendant's requirement that Plaintiff attend weekly meetings with Rodriguez cannot form the basis of Plaintiff's ADA disability discrimination claim.

In sum, the Court finds that Plaintiff has not introduced evidence sufficient to raise a genuine dispute of material fact that Defendant discriminated against her because of her Crohn's Disease. Accordingly, the Court grants Defendant's Motion with respect to Count I: Disability Discrimination under the ADA.

### B.     Count II: Retaliation (ADA)

Plaintiff's second cause of action alleges that, in violation of the ADA, Defendant retaliated against Plaintiff for "reporting potential Disability Discrimination to Defendant." (Doc. 50 at 6). Under the ADA, "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding or hearing under this chapter." 42 U.S.C. § 12203(a).

The *McDonnell Douglas* framework and allocation of proof that governs disparate treatment claims also governs retaliation claims. *Yartzoff v. Thomas*, 809 F.2d 1371, 1375 (9th Cir. 1987) (citing *Ruggles v. Cal. Polytechnic State Univ.*, 797 F.2d 782, 784 (9th Cir. 1986). Under *McDonnell Douglas*, a plaintiff must first establish a *prima facie* case of retaliation. 411 U.S. at 802. If the plaintiff establishes a *prima facie* case of retaliation, the defendant has the burden of articulating a legitimate, non-retaliatory reason for its action. *Porter v. Cal. Dep't of Corr.*, 419 F.3d 885, 894 (9th Cir. 2005). Once the defendant has presented a purpose for the action, the plaintiff bears the ultimate burden of providing evidence that the defendant's reason is "merely a pretext for a retaliatory motive." *Id.*

### 1.    Plaintiff's *Prima Facie* Case

To establish a *prima facie* case of retaliation, Plaintiff must show that (1) she engaged in a protected activity; (2) she suffered an adverse employment action; and (3) there was a causal link between her protected activity and the adverse employment action. *Raad v. Fairbanks N. Star Borough Sch. Dist.*, 323 F.3d 1185, 1197 (9th Cir. 2003).

### a.    Protected Activity

Plaintiff alleges that when she complained to Defendant's Ethics Hotline about perceived disability discrimination, she engaged in a protected activity. (PCSOF ¶¶ 111–14). "Pursuing one's rights under the ADA constitutes a protected activity." *Pardi*, 389 F.3d at 850. Thus, the Court finds that Plaintiff engaged in a protected activity. *See Chen v. Maricopa Cnty.*, No. CV-12-00814-PHX-GMS, 2013 WL 105484 at *4 (D. Ariz. Mar. 14, 2013) (leaving a message on an anonymous hotline constitutes a protected activity).

### b.    Adverse Employment Actions

Plaintiff argues that Defendant subjected her to four adverse employment actions by: (1) requiring her to "fill out an ADA form to inform Defendant how much work Plaintiff was going to need"; (2) requiring her to "sit down and meet with Keller"; (3) accusing her "of missing work beyond the number of days allowed to an employee"; and (4) requiring her to "attend weekly one-on-one training meetings with her supervisor." (Doc. 57 at 12). In the retaliation context, an adverse employment action is an action that is "reasonably likely to deter employees from engaging in protected activity." *Vasquez*, 349 F.3d at 646.

First, asking an employee to fill out a standard accommodation request form in response to that employee's oral request for accommodation surely does not deter a reasonable employee from engaging in a protected activity.

Second, Plaintiff's meeting with Keller was not an adverse employment action. The meeting was called to resolve differences between Plaintiff and Keller.

(PCSOF ¶ 127; DSOF ¶ 127). Also, in the meeting, Keller welcomed Plaintiff to call Defendant's Ethics Hotline if any further issues arose. (PCSOF ¶ 144; DSOF ¶ 144). Thus, because it was not reasonably likely to deter Plaintiff from engaging in future protected activity, the Court finds that the meeting was not an adverse employment action. *See Panning v. Eureka Cnty.*, 2012 WL 3324197, at *4 (D. Nev. Aug. 13, 2012) (holding that a meeting, which neither substantially threatened the plaintiff against any future expression nor constituted discipline or reprimand, was not an adverse employment action).

Third, Keller's accusation that Plaintiff missed more days of work than allowed is not an adverse employment action. In *Nunez v. City of L.A.*, the Ninth Circuit held that simply being "bad-mouthed" or "verbally threatened," a stronger action than Keller's equivocal comments about missed workdays, is insufficient to establish an adverse employment action. 147 F.3d 867, 875 (1998).

Fourth, weekly one-on-one meetings with Plaintiff's supervisor are not adverse employment actions. Plaintiff offers no facts that support as much as even a reasonable inference that weekly one-on-one meetings with Rodriguez would deter Plaintiff from complaining about future perceived ADA violations. Thus, Plaintiff fails to meet her *prima facie* burden. *See Henry v. Potter*, 2010 WL 2990197, at *13–14 (Dist. Or. July 23, 2010) (finding that the plaintiff failed to raise a factual issue that a meeting was an adverse employment action where plaintiff provided no concrete evidence that a meeting deterred him from engaging in protected activity). However, to the extent that weekly one-on-one meetings caused Plaintiff's "working conditions [to become] so difficult and unpleasant" that they would deter Plaintiff from engaging in protected activity (Doc. 57 at 12), the Court will analyze causation.

### c.    Causation

To succeed in showing a *prima facie* case for retaliation, a plaintiff must prove a causal link between a protected activity and the employer's action "according to traditional principles of but-for causation, not the lessened causation test stated in

§ 2000e-2(m). This requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S.Ct. 2517, 2533 (2013). Accordingly, Plaintiff must show that she would not have suffered the requirement of weekly one-on-one meetings with Rodriguez but-for her call to the Defendant's Ethics Hotline. Here, Keller met with Plaintiff because of the issues Plaintiff raised in the Ethics Hotline call. (PCSOF ¶ 127; DSOF ¶ 127). Keller referenced Plaintiff's Ethics Hotline complaints in her explanation for requiring the one-on-one meetings between Plaintiff and Rodriguez. (Doc. 54-2 at 37–38). As a result, Plaintiff has established a but-for causal link between her complaint to Defendant's Ethics Hotline and Keller's requirement that Plaintiff attend one-on-one meetings with Rodriguez.

### 2.    Legitimate Non-Retaliatory Reason

Once a plaintiff successfully establishes a *prima facie* case of retaliation, the burden of production shifts to the defendant to present a legitimate, non-retaliatory reason for undertaking the adverse employment actions. *Ray v. Henderson*, 217 F.3d 1234, 1240 (9th Cir. 2000). Defendant argues that Keller's desire to address Plaintiff's communication skills is a non-retaliatory reason for the one-on-one meetings between Rodriguez and Plaintiff. (PCSOF ¶¶ 140–42; DSOF ¶¶ 140–42). *See supra* Part III(A)(2)(c). The Court finds that Defendant has met its burden of production in stating a legitimate non-retaliatory reason for requiring one-on-one meetings with Rodriguez. The burden now shifts back to Plaintiff to show that Defendant's proffered reason for undertaking the adverse employment action is pretext for retaliation.

### 3.    Pretext

To show pretext, a plaintiff must "produce evidence in addition to that which was sufficient for her *prima facie* case in order to rebut [the defendant's] showing." *Stegall v. Citadell Broad. Co.*, 350 F.3d 1061, 1069 (9th Cir. 2003) (quoting *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1220 (9th Cir. 1998) (internal quotation marks omitted). A plaintiff may show pretext either by "directly persuading the court that a discriminatory

1    reason more likely motivated the employer or indirectly by showing that the employer's

2    proffered explanation is unworthy of credence." *Id.* (quoting *Burdine*, 450 U.S. at 256)

3    (internal quotation marks omitted). When "the plaintiff proffers only circumstantial

4    evidence that the employer's motives were different from its stated motives," courts

5    require " 'specific' and 'substantial' evidence of pretext to survive summary judgment."

6    *Id.* (quoting *Godwin*, 150 F.3d at 1222).

7        Similarly to the Court's conclusion with respect to Plaintiff's meeting-based ADA

8    discrimination claim, *see supra* Part III(A)(2)(c), the Court finds that Plaintiff has not

9    proffered sufficient evidence of pretext. The undisputed record shows that Plaintiff,

10   herself, acknowledged her own communication and prioritization problems and requested

11   more feedback from Rodriguez. Plaintiff offers no evidence that her own requests for

12   time with Rodriguez are mere pretext for retaliation.

13       Thus, the Court finds no genuine dispute of material fact with respect to the one-

14   on-one meetings claim. Accordingly, the Court finds that Defendant's requirement that

15   Plaintiff attend weekly meetings with Rodriguez cannot form the basis for Plaintiff's

16   ADA retaliation claim.

17       In sum, the Court finds that Plaintiff has not introduced evidence sufficient to raise

18   a genuine dispute of material fact that Defendant retaliated against her because of her call

19   to Defendant's Ethics Hotline. Accordingly, the Court grants Defendant's Motion with

20   respect to Count II: Retaliation under the ADA.

21       **C.    Count III: Constructive Discharge and Retaliation (ACRA)**

22       Plaintiff's third cause of action is that Defendant constructively discharged

23   Plaintiff in violation of A.R.S. § 23-1502 and that Defendant unlawfully retaliated against

24   Plaintiff in violation of the ACRA, A.R.S. §§ 41-1461–1465. (Doc. 50 at 6–7).

25       **1.    Timeliness of the ACRA Claim**

26       Defendant argues that Plaintiff's claim arising under the ACRA is time-barred

27   because Plaintiff filed this lawsuit over a year after Plaintiff filed charges with the

28   ACRD. (Doc. 53 at 11). Plaintiff concedes that her ACRA claim is not timely; however,

1    Plaintiff urges this Court to apply equitable tolling to the ACRA's statute of limitations.

2    (Doc. 57 at 10–11).

3           The Court concludes that there is no basis for equitable tolling in this case, and,

4    therefore, Plaintiff's ACRA claims must be dismissed as time-barred. The ACRA states

5    that:

6                    Within ninety days after the giving of [a] notice [by the
                     ACRD] a civil action may be brought against the respondent
7                    named in the charge by the charging party . . . . *In no event*
                     shall any action be brought pursuant to this article more than
8                    one year after the charge to which the action relates has been
                     filed.
9

10   A.R.S. § 41-1481(D) (emphasis added). Even when the EEOC investigation extends

11   close-to or longer-than one year, this Court has strictly interpreted the language of this

12   statute as setting an absolute maximum amount of time to file suit and have not applied

13   equitable tolling to the ACRA claims. *See Strand v. John C. Lincoln Health Network,*

14   *Inc.*, No. CV-10-02112-PHX-NVW, 2011 WL 1253408, at *2 (D. Ariz. Mar. 31, 2011)

15   (dismissing the plaintiff's ACRA claim because of the one-year statute of limitations

16   even though the EEOC did not issue its notice of right to sue for nearly one-and-a-half

17   years after the charge was filed); *see also McElmurry v. Ariz. Dep't of Agric.*, No. CV-

18   12-02234-PHX-GMS, 2013 WL 2562525, at *3 (D. Ariz. June 11, 2013) (dismissing the

19   plaintiff's ACRA claim because of the one-year statute of limitations where the EEOC

20   took ten months to issue its notice of right to sue).

21          Equitable tolling is "applied sparingly" and is generally allowed "when the statute

22   of limitations was not complied with because of defective pleadings, when a claimant

23   was tricked by an adversary into letting a deadline expire, and when the EEOC's notice

24   of the statutory period was clearly inadequate." *Scholar v. Pac. Bell*, 963 F.2d 264, 268

25   (9th Cir. 1992) (citing *Irwin v. Veterans Admin.*, 498 U.S. 89, 96 (1990)). Additionally,

26   "[o]ne who fails to act diligently cannot invoke equitable principles to excuse that lack of

27   diligence." *Baldwin Cnty. Welcome Ctr. v. Brown*, 466 U.S. 147, 151 (1984) (per

28   curiam).

1    Here, on September 22, 2009, Plaintiff filed her charge with the EEOC which was
2    referred to the ACRD pursuant to a work sharing agreement between the two agencies.
3    (PCSOF ¶ 3; DSOF ¶ 3; Doc. 58-1 at 48). The EEOC did not issue its notice of right to
4    sue until March 27, 2012 (Doc. 58-1 at 40–41), a "number of more months" after the
5    "[ACRD] issued the Right to Sue" (Doc. 57 at 11). Plaintiff did not initiate this lawsuit
6    until November 16, 2012. (Doc. 1 at 1). Plaintiff asks the Court to embrace equitable
7    tolling "[i]n the interest of judicial economy" because "it makes sense for Plaintiff to file
8    one case and include all the causes of action that she deems fit." (Doc. 57 at 11). Even if
9    this Court generously allowed equitable tolling by departing from the strict interpretation
10   of A.R.S. § 41-1481(D)'s one-year statute of limitation, Plaintiff's claims would still be
11   untimely. Plaintiff initiated this lawsuit over 90 days after the EEOC's, as well as the
12   ACRD's, notice of right to sue was issued. While the 90-day period to file suit after
13   ACRD's notice can be subject to equitable tolling,[10] here the Court finds a lack of
14   diligence in Plaintiff's delayed filing of this lawsuit after the EEOC issued its notice of
15   right to sue. Thus, the Court finds no reason to allow equitable tolling on *both* Plaintiff's
16   failure to comply with A.R.S. § 41-1481(D)'s one-year statute of limitations *and*
17   Plaintiff's failure to comply with A.R.S. § 41-1481(D)'s 90-day period to file suit after
18   receiving notice of right to sue. As a result, Plaintiff's ACRA claim is time-barred under
19   Arizona state law. Accordingly, the Court grants Defendant's Motion with respect to
20   Count III: Constructive Discharge and Retaliation under the ACRA.

21   **IV.    CONCLUSION**

22       Accordingly,

23   //

24   //

25   //

26   //

27

28   ---

[10] *See Kyles v. Contractors/Eng'rs Supply, Inc.*, 949 P.2d 63, 65 (Ariz. Ct. App. 1997) (equitable tolling applied where notice of right to sue incorrectly stated deadline for filing action).

1    **IT IS ORDERED** that Defendant University Physicians Healthcare's Motion for

2    Summary Judgment (Doc. 53) is **GRANTED**. Because this Order resolves each of

3    Plaintiff's claims in this case, the Clerk of the Court shall enter Judgment for Defendant

4    and Plaintiff shall take nothing.

5    Dated this 28th day of July, 2014.

6

7

8

9    James A. Teilborg
     Senior United States District Judge